## State ex rel. Reedsburg Bank vs. Hastings.

By sections 4 and 5 of Article XI of the constitution of this state, there is a substantial reservation to the people themselves of all legislative power upon the subject of banks and banking.

The clause in the constitution which requires that "the rule of taxation shall be uniform," is a limitation upon the legislature in the exercise of its general power to levy taxes, and not a restriction upon the people in the exercise of the power thus reserved.

That portion of the banking law of this state which regulates the taxation of the capital stock of banks, is therefore not in violation of that clause in the constitution.

| 12 | 47 |
| 90 | 169 |
| 12 | 47 |
| L103 | 46 |
| 103 | 47 |

| 12 | 47 |
| 60 LRA 357n | |
| 60 LRA 362n | |

APPLICATION for a Mandamus.

The case will appear sufficiently from the opinion of the court.

*Geo. B. Smith,* for relator.

*S. U. Pinney,* for respondent.

*By the Court,* Dixon, C. J.   This is an application for a mandamus to compel the respondent, who is treasurer of the state, to deliver to the relator, a corporation organized under the provisions of the law authorizing the business of banking, certain interest coupons attached to the state bonds deposited by the relator with the respondent as security for the redemption of its circulating notes.   The proceeding is amicable in its nature, and designed to test the validity of that portion of the law which regulates the taxation of the capital stock of banks, and which is supposed to have been rendered doubtful by the decisions of this court in the cases of *Knowl-*

March 6.

Jan. Term,
1860.

STATE ex rel.
REEDSBURG
BANK
v.
HASTINGS.

ton vs. *The Supervisors of Rock Co.*, 9 Wis., 410, and *The Attorney General vs. The Winnebago Lake & Fox River Plankroad Co.*, 11 Wis., 35.    Those cases determine that the rule of uniformity prescribed by the constitution, requires that all property taxed for the purposes of revenue, whether general or local, shall be taxed equally, according to its just and true value; and that no one species of property, from which such taxes may be collected, shall be taxed higher than any other species of equal value.

The application sets forth, that the bank is the owner of thirty-four bonds issued by the state of Tennessee, and two issued by the state of Missouri, each for the sum of $1,000, drawing interest at the rate of six per cent. per annum, payable semi-annually, on the first days of January and July in each year, which it transferred to the respondent in trust, to secure the redemption of its circulating notes; that the semi-annual instalments of interest are secured by coupons attached to each bond; that on the first day of January, 1860, there became due upon each bond the sum of thirty dollars in interest, amounting in all to ten hundred and eighty dollars, which can only be collected on presentation of the proper coupons; that on the 15th day of February following, the bank comptroller made and delivered to the bank his order in writing, directed to the respondent, requiring him to deliver the coupons to the bank; and that on the same day the order was presented to the respondent, who peremptorily refused to deliver the same, or either of them.

The respondent, in his return, admits these allegations, but seeks to avoid them by averring that the capital stock of the bank is $50,000, upon which there became due and payable to him, as state treasurer, on the first day of January, a semi-annual tax of three-fourths of one per centum, amounting to $375, which still remains unpaid; and that he' has a lien upon the coupons for the amount of· the tax, together with the additional sum of $500, which has been forfeited by reason of its non-payment.

To this the bank demurs, upon the ground that the statute (sec. 20, chap. 71, R.S.) is unconstitutional and void, within the principles established by the decisions above re-

ferred to. It reads as follows: "Every bank and banking association, organized under the provisions of this chapter, shall pay to the state treasurer, on the first day of January and July of each year, a semi-annual tax of three-fourths of one per centum on the amount of capital stock of such bank or banking association; the first payment of such tax to be computed at the rate of one and a half per centum per annum from the time of filing the certificate required in section two, to the first day of January or July then next succeeding. If any bank or banking association, as aforesaid, shall neglect or refuse to pay said tax for ten days after it shall become due, notice of non-payment shall be sent to such delinquent, by the state treasurer, and if the payment be not made within twenty days thereafter, such delinquent bank or banking association, shall, in addition to the tax aforesaid, forfeit and pay to the said treasurer, for the use of the state, one per centum on the amount of its capital stock. The above semi-annual tax and forfeiture shall always constitute a lien on the interest of the securities deposited with the treasurer, as provided in section twenty-two; and in case of non-payment of such tax and forfeiture, or either of them, the treasurer is authorized and required to revoke the power of attorney granted such delinquent, as provided in section thirty-one, to collect the interest of such securities, and apply the same to the payment of said tax and forfeiture, or either of them, and hold the balance, if any, subject to the order of such delinquent. If the interest of said securities shall be insufficient to pay said tax and forfeiture, the treasurer, after deducting the amount of said interest, may collect the balance in any court of competent jurisdiction in the county where such delinquent is located, in the name and on behalf of the state. Said capital stock shall be exempt from all other taxes, except on that portion of said capital stock which shall consist of and include the real property of such banks or banking association; and the real property of all banks or banking associations, shall be assessed and taxed in the city, ward, village, or town where the same is located, for all state, county, town, and corporation purposes, in the name of such bank or banking association: *Provided,*

Jan. Term, 1860.

STATE ex rel. REEDSBURG BANK
v.
HASTINGS.

Jan. Term,
1860.

STATE ex rel.
REEDSBURG
BANK
v.
HASTINGS.

that the owner or holder of shares in stock, in any bank or banking association, shall not be taxed as an individual for such shares of stock."

It must be conceded that the mode of taxation here adopted cannot be distinguished, in principle, from that prescribed for the taxation of the property of rail and plank road companies, which was held to be unconstitutional; and that if this were a statute of the ordinary character, or one which the legislature alone could enact, it must, within the principle of the plank road case, be held void. For it seems clear, that if it were a mere ordinary statute, such as the legislature is daily in the habit of passing, it could not be upheld on the ground that it was a contract between the state and the corporation. The existence of such a contract presupposes power on the part of the legislature to enter into it; and if the legislature had no such power, or were plainly prohibited by the constitution, then there would be no contract, and consequently no obligation to be violated. But it is insisted, on the part of the respondent, that the peculiar nature of the statute, and the mode of its enactment, under the constitution, is such that it cannot be governed by the doctrine there laid down; that it is not an exercise by the legislature of its general power to levy taxes, which the rule with respect to taxation was designed to limit, but that it is a kind of legislative act of the people, passed and adopted by them in their primary capacity, pursuant to a power reserved by the constitution itself, and therefore is not subject to those constitutional restraints which were designed to limit and control the action of their agents and representatives. We think the position is correct, and that it takes the capital stock of banks and banking associations out of the rule of taxation prescribed by the constitution for other taxable property.

Sections four and five of Article XI of the constitution, are as follows: "Sec. 4. The legislature shall not have power to create, authorize, or incorporate, by general or special law, any bank or banking power or privilege, or any institution or incorporation, having any banking power or privilege whatever, except as provided in this article.

"Sec. 5. The legislature may submit to the voters, at any general election, the question of 'bank or no bank,' and if at any such election, a number of votes equal to a majority of all the votes cast at such election on that subject, shall be in favor of banks, then the legislature shall have power to grant bank charters, or to pass a general banking law, with such restrictions, and under such regulations as they may deem expedient and proper for the security of bill holders: *Provided*, that no such grant or law shall have any force or effect, until the same shall have been submitted to a vote of the electors of the state, at some general election, and been approved by a majority of the votes cast on that subject at such election."

The law we are considering was enacted under these provisions of the constitution. At first, the legislature could not charter a bank, nor create any banking power or privilege whatever. It could only submit the question of "bank or no bank," to the voters, at some general election. A majority of votes cast at such election having been in favor of banks, it could then grant bank charters, or pass a general banking law, neither of which, however, could be of any force or effect, until submitted to and approved by a majority of the electors voting on that subject at some subsequent general election. This was a substantial reservation to the people themselves, of all legislative power upon the subject of banks and banking. Not only could the legislature not act upon the subject without the assent of the people, but the people retained the power of determining, in every particular, what the bank charters, or general banking law, should be. They could have no force until ratified by a majority of the voters. It is true, the constitution provides that the legislature must act, but only in subordination to the direct action of the people, and as a means of enabling them, in proper form, to express their superior will. The law emanates from the same source as the constitution, and in this respect would seem little inferior in dignity and importance to the constitution. The subject was considered of such gravity and interest, that all authority and control over it was withheld from the legislature, to be exercised by the

Jan. Term,
1860.

people in their sovereign capacity, very much in the manner in which they ratified the constitution, and provided that it might be amended.

The people having reserved the power, it is difficult to see how the restrictions of the constitution can be applied to it. The reservation is absolute and unqualified, and carries with it the authority to prescribe what the law shall be in all respects. The constitution is elsewhere silent upon this particular subject, and leaves the action of the people free and unrestricted. It is so much legislative or political power taken out of its operation, and retained to be acted upon by the people, in the same manner as the constitution itself. It is not, therefore, within the spirit or object of the restrictions of the constitution. They were intended to qualify and control those powers which were delegated to the several departments of the government, and it would be absurd to think of applying them to those which were not so delegated, and which the government, consequently, did not possess. This power being retained in the hands of the people, there was no reason why they should seek to restrict its exercise. They surely were not afraid to trust themselves; and if they had been, we can hardly see how they could have avoided it, since it is one of the essential attributes of sovereignty, that it cannot prescribe limits to its own action. They did not, however, attempt to do so, and the law having been passed in pursuance of a power thus absolutely reserved, we do not see how it can be said to be an infringement of any of the provisions of the constitution.

The demurrer must therefore be overruled.

NOTE.—The opinions in this and the next case, were not received in time to be inserted in their proper place.—REP.