## Van Steenwyck vs. Sackett and another.

The Banking Law of this state cannot be amended by the legislature without a vote of the people.

*It seems* that the legislature may impose new duties on banking corporations in common with other persons, as incidental to the exercise of other acknowledged powers of legislation. But such legislation could be sustained only upon the ground that it was not an amendment of the Banking Law, but a proper exercise of power outside of the scope of that law, and by which its provisions were in no way affected.

Chap. 47, General Laws of 1855 [now secs. 34–36, 43, 44, 51, 52, chap. 71, R. S.] professed to amend the original Banking Law, and its provisions are such that it could only be sustained as an amendment to that law. Not having been submitted to a vote of the people, its provisions are not in force.

But where a bank executed a warrant of attorney under the provisions of that law, a judgment entered upon it should not be set aside on the ground that the bank could not have been compelled to execute such warrant of attorney.

The securities required by sec. 25 of the original Banking Law [sec. 40, ch. 71, R. S.] to be sold by the comptroller in certain cases, are those required to be deposited with him by secs. 5 and 6 of that law [secs. 22 and 23, ch. 71, R. S.]

The receiver appointed under sec. 25 of the original Banking Law [sec. 40, ch. 71, R. S.] is the proper person to bring an action upon the stockholders' bond described in sec. 17 of the law [sec. 33, ch. 71, R. S.] But where judgment upon such a bond was entered up by the bank comptroller under a warrant of attorney for that purpose, the judgment, if otherwise regular and just, may be allowed to stand, and be enforced by a receiver subsequently to be appointed.

The supervision which courts exercise, on motion, over judgments entered upon warrants of attorney, with release of errors, is of an equitable character; and the party moving to set aside must show that he has been subjected to some injustice before the court will interfere. It is not sufficient for him to point out mere technical errors or irregularities.

Where, therefore, a judgment (with release of errors) had been entered, under a warrant of attorney, upon a stockholders' bond deposited by a bank as security for its bills, the judgment should not have been set aside merely because it did

not appear from the complaint that any bills had been delivered to the bank for circulation *after* the execution of the bond.

The Banking Law, as amended in 1858, authorized an action on the stockholders' bond, if, after the securities deposited with the comptroller should have been depreciated for *sixty* days, and notice thereof had been served upon the president and cashier, the bank neglected for thirty days to make a further deposit of securities or of its circulating notes.

An affidavit that "no such notice as the law required was served" upon the officers of the bank, is not a denial that a notice was served, but merely an assertion that in the opinion of the affiant the notice served was not such as the law required.

APPEAL from the Circuit Court for *Dane* County.

This was an action by the bank comptroller of this state upon a bond in the sum of $12,500, executed October 8, 1860, under section 17 of the General Banking Law, by the defendants *Sackett* and *Lawrence*, the former as sole owner and the latter as surety for the Portage County Bank. The condition of the bond was in these words: "Whereas the said banking association purposes to receive, has received or may hereafter receive from said bank comptroller, circulating notes to the amount of fifty thousand dollars under the provisions of the act above mentioned: Now therefore if the said banking association shall indemnify and save harmless the holders of the bills that may, or shall hereafter, be put in circulation as money, under the provisions of said act, by such banking association, against any loss that may be sustained in case the securities deposited with the comptroller shall be insufficient to redeem said bills, then this obligation to be void," &c. The defendants, on the same day, executed a warrant of attorney authorizing the attorney general of this state &c. to appear for them in any of the circuit courts of this state, "then and there to receive a declaration for [them] in debt for the sum of $12,500," &c. on said bond, "or on a *mutuatus*, for the said sum of money borrowed by [them], at the suit of G. Van Steenwyck, bank comptroller of the state of Wisconsin, his successors in office or assigns" &c. The warrant also contained a power to release errors in the judgment or execution,

and a clause was added declaring that the warrant was executed in pursuance of section 7, chap. 47, General Laws of 1855.

The complaint, which was filed October 18, 1861, states, among other things, that on the 3d of June, 1861, the current market value of the securities transferred by said banking association to the state treasurer in trust, as provided in said act, was, and for *sixty days* then last past had been, in the opinion of the bank comptroller, and in fact, less than the value at which said securities were deposited, to the amount of *four thousand and eighty dollars;* and the bank comptroller *did thereupon duly notify* said banking association, in writing, of said depreciation in the value of such securities, and the said banking association did not, within thirty days after receiving such notice, cause securities of the kind in such cases required by said act, or an equal amount of the circulating notes of said banking association, or either, to be transferred to the said treasurer in trust, as required by said act, equal to the said amount of depreciation * * * , but said banking association did, for thirty days after the date of said notice, and still does, neglect and refuse to deposit securities or circulating notes to the amount of such depreciation as required by said act, to the damage and loss of the holders of the circulating notes or bills of said banking association in the sum of *eight thousand dollars*," for which sum judgment is demanded.

The complaint was accompanied by an affidavit of *Van Steenwyck*, stating that the bond mentioned in the complaint was given to secure a contingent liability, and that the facts constituting such contingent liability were as follows: "The securities transferred by the banking association mentioned in the complaint, to the state treasurer, in trust for the redemption of the circulating notes of said banking association, having depreciated in value as set forth in the complaint, and said banking association having, after due notice of such depreciation, failed to make its securities for such redemption good

and sufficient, the holders of such circulating notes have sustained and are liable to sustain a loss by reason of such depreciation, to the amount of eight thousand dollars."

The answer, filed by virtue of the warrant of attorney, admits and confesses that the defendants "are indebted to the plaintiff in this action  *  *  *  in the sum of eight thousand dollars, by reason of the premises in said complaint set forth, and consent that judgment may be entered against them and each of them for said sum and the costs of this action;" and releases errors.

Upon the filing and inspection of these papers, judgment was entered by order of a court commissioner, October 18, 1861, and the attorney who filed the answer filed also a release of all errors in the entering up of the judgment. At the next term of the circuit court, in the following November, the judgment was set aside by the court on motion of the defendants; and from this order the plaintiff appealed. The record here does not show the grounds upon which the order was made.

The cause was first argued at the June term, 1862.

*H. W. & D. K. Tenney*, for the defendants:

1. The act of 1855, which requires a warrant of attorney to be attached to the stockholders' bond, and provides for the entry of judgment on it, was never submitted to the people, and is void. The warant in this case having been exacted and received without authority of law, no judgment could be entered upon it.  2. Sec. 25 of the original Banking Law provides that in a case such as is alleged to exist here, "it shall be the duty of the comptroller to make application to the circuit court of the county in which said association may be located, to have receivers appointed as provided by sec. 9, chap. 54, of the Revised Statutes [of 1849], who shall have the powers and perform the duties that are required by that section. But this section shall not be so construed as to require the surrender to such receiver of any securities deposited with the

treasurer or comptroller pursuant to this act, and the comptroller shall sell such securities for the payment of the bills or notes issued by the bank, as 'he is required to do in other cases." Under this provision, which is the only one on the subject, the bond would have to be passed over to the receiver, and suit brought by him. The law thus provides for a judgment in favor of the receiver, but nowhere for a judgment in favor of the bank comptroller. 3. The entry of a judgment by confession is a statutory proceeding, strictly defined and limited in chap. 140, R. S. No judgment can be confessed except in the cases and manner there specified. The judgment there authorized to secure against a contingent liability, is a present judgment, in the nature of a mortgage to secure future advances. At least it requires a present and absolute *power*, and does not authorize judgment on a power the existence of which is contingent on the happening of certain extrinsic events, as to the happening of which the bond and warrant give no information to the attorney who assumes to act under it. Such attorney has no right to make such confessions in ignorance whether or not the contingency has happened in which the power was to become operative, and he has no means of taking any legal proof upon the subject. He can only confess what is fixed and shown by the papers. 6 Wis., 209. 4. In this case the bond and warrant of attorney both expressly refer to the banking law of 1852, and show on their face that they were given in pursuance of its provisions, and only to be valid in the contingencies therein provided for. The attorney was thus apprised that the power was contingent and not absolute. The contingency referred to in the law of 1852 is contained in section 25—a depreciation of securities continuing *ninety* days. The complaint only alleges a depreciation of *sixty* days. The power, if valid at all, is limited to the law to which it refers, and cannot be extended to cases provided for by later acts. 5. The warrant of attorney was more than a year and a day old, and no proof was made of its exe-

cution or consideration, or that the defendants were alive at any certain time, and no leave was obtained of the court or judge to enter judgment by virtue thereof. 6. The warrant, though executed long before the code was in force, only authorized a judgment according to the abolished forms of the common law, which being impossible, no judgment could be confessed by virtue of it. Blackwell on Tax Titles, 49–51. 7. The judgment purports to be entered to secure a contingent liability, but there is no affidavit annexed to the complaint stating the facts constituting such liability and showing that the sum confessed does not exceed the same. The affidavit actually annexed assumes several things, but states no facts except that the affiant is bank comptroller, and some of his opinions. 10 Wis., 76; 11 id., 112. 8. The complaint does not state facts constituting a cause of action. No breach of the bond is shown. The bond only secures the bills *thereafter* issued, and it is nowhere alleged that any bills were issued thereafter, or that any remained unredeemed. On the contrary, the complaint states that the bank was organized and went into business on the 20th of June, 1859. This organizing and going into business consists in depositing the securities and bond and receiving the bills, and these must therefore have been done more than a year before the bond now in question was given. 9. The contingency in which the warrant of attorney was to become operative has not in fact arrived. No notice of depreciation was given to the bank as required by law.* 10. There is no allegation that the securities of the bank have been advertised for sale. This is a prerequisite to the entry of judgment by the act of 1855. The securities of the bank are the primary fund, and the obligors in the bond are sureties. The primary fund ought to be exhausted first. By the unreasonable delay of the plaintiff, the securities of the bank have become greatly depreciated, which relieves the

*Note.—This objection is founded upon affidavits of the president and cashier of the bank which are referred to in the opinion of the court, but are no longer on file with the papers in the cause.—Rep.

sureties from liability.    11. The judgment entered is not for the penalty of the bond, as required by R. S., chap. 140, sec. 19.

*James H. Howe*, Attorney General, *contra.*

1. The common law rule that a judgment could not be entered upon a warrant of attorney more than a year and a day old, without leave of the court, does not apply to this case. (1.) The banking act (chap. 71, R. S.) directs the bank comptroller to enter a judgment upon the bond whenever the bank shall make default in one of the conditions of the charter. This is, of course, a *continuing* direction. Whenever the default occurs he is directed to enter up a judgment by virtue of *that* warrant. It has the same effect as if a statute had been passed within the year directing the entry of a judgment. (2.) If the common law rule was ever in force in this state, it has been repealed by our statute. R. S., chap. 140, secs. 12 to 15. (3.) The common law rule was adopted in analogy to the rule requiring a *scire facias* to revive a judgment more than a year and a day old, prior to the issue of an execution. That rule has been changed by our statute, which gives an execution of course at any time within five years from the entry of judgment. The reason of the law having ceased, the law itself should cease. (4.) The appearance of the defendants in the cause—and they have made a general appearance—supplies the only defect in the proceedings even at common law. It shows conclusively that the defendants are *alive*.    2. As to the objection that the warrant of attorney only authorizes a declaration in debt or upon a *mutuatus*, it is a sufficient answer that long before these bonds were executed, all distinctions between the forms of actions were abolished. The complaint is as much a declaration in debt as the rules of practice of our courts would permit. It is a complaint upon a sealed instrument; it sets forth with distinctness the bond which constitutes the cause of action, its date, the performance by the plaintiff, the breach of its conditions by the bank, and the amount due up-

on it to the plaintiff, with a demand for judgment. This is all that a declaration in debt under the old practice would have contained. A mere change in name leaving the substance untouched cannot affect the rights of the holders of the bills of these banks. 1 Chitty's Pl., 360 *et passim.* 3. The affidavit annexed to the complaint is sufficient. It states the purpose for which the bond was given; the depreciation of the securities deposited with the state treasurer by the bank; the notice to the bank of such depreciation; and its failure to make the securities good. These are the facts constituting the liability of the defendants. It also states that " the holders of such circulating notes have sustained and are liable to sustain a loss by reason of such depreciation to the amount of $8000." Does not this *show* that the sum confessed does not exceed the liability of the defendants? Again, a defective affidavit would not invalidate the judgment as between the parties to the same. The design of the statute in requiring the affidavit prescribed by sec. 14, chap. 140, R. S., was to guard against fraud in entering up judgment where no liability really existed, to the prejudice of honest creditors. A defective affidavit would be no injury to a defendant against whom valid grounds for entering judgment really existed. Such affidavit is not essential to the jurisdiction of the court. At common law courts had authority to enter judgment upon confession. *Dunham vs. Waterman,* 17 N. Y., 9; *Hoyt vs. Hoyt,* 1 Har. (N. J.), 138. 4. As to the objection that the bond only secures the bills *thereafter* issued, and that it is nowhere alleged that any bills were issued thereafter, counsel answered: The complaint alleges that the banking association had issued and put in circulation bank bills to be used as money to the amount of $50,000, and that the defendants, for the purpose "of partially securing the redemption of said bills, executed the bond described in the complaint. It would seem that the bond was executed before the bills were issued. The contrary cannot be presumed. Had the bank comptroller delivered the bills

before receiving the bond, he would have been guilty of a criminal neglect of duty. Had the banking association received and issued the bills before giving the bond, it would have been liable to pay the forfeiture prescribed by R. S., chap. 46. The bonds contemplated to be given under sections 34 and 35, chap. 71, R. S., are in lieu of the bond required in the first instance by sec. 33; and they are declared by the statute to be as binding and obligatory as the original bond. It is therefore immaterial whether the bond mentioned in the complaint was the original bond or was executed and received in lieu of such original, or whether it was issued before or after the issuing of the circulating notes; it is nevertheless binding upon the obligors. 5. No allegation or admission that the plaintiff had advertised the securities of the bank for sale at the time when the judgment was entered, was necessary. The provision of the statute (R. S., chap. 71, sec. 36) is merely directory, prescribing the duty of the bank comptroller, viz., that he shall enter judgment upon the bond immediately upon advertising for sale the securities. It in no way creates, limits or defines the liability of the persons executing the bond. 6. the judgments ought not to have been set aside for any error, irregularity or informality in entering up the same, if any existed, because the respondents, by the warrant of attorney, and by the act of their attorney pursuant to the warrant, released all errors in the entering up of said judgment. *Landon vs. Pickering*, 2 Str., 1215; *Baddeley v. Shafto*, 8 Taunt., 434; *Ex'rs of Wright v. Nutt*, 1 Term R., 388; *Blunt & Farly v. Snedston*, Cro. Jac., 116; *King v. Shaw*, 3 Johns., 142; 15 Ill., 356. Again, the statute under which the bonds and warrant of attorney were given, and under which the judgment was entered, provides that "no judgment so entered up shall be set aside or delayed in consequence of any error or informality in the bond or warrant of attorney, or in the proceedings in entering up the same." R. S., chap. 71, sec. 36. The respondents must be held to have executed the bond and warrant of

attorney with particular reference to the statute therein refer-
red to, and to have assented to all its terms and provisions.  7.
The facts stated in the complaint, affidavit of the plaintiff, and
answer, are sufficient to entitle the plaintiff to judgment, and
no error or informality can render the same invalid.  It is for
the defendants to show that no grounds for the entry of judg-
ment existed, and the specific grounds wanting.  Should such
showing tender an issue between the parties, it must be tried
by jury.

The following opinion was filed October 11, 1862.

*By the Court*, PAINE, J.  A majority of the court is of the
opinion that it is incompetent for the legislature to amend the
Banking Law without submitting the amendment to a vote of
the people.  The law itself so provides, and this conclusion
seems necessarily to result from the view taken of the nature
of that law in the case of *The State ex rel. The Reedsburg Bank
vs. Hastings*, 12 Wis., 47.  We there held that the Banking
Law was in the nature and had the force and effect of a con-
stitutional provision.  The people reserved the power to legis-
late upon that subject to themselves.  They exercised the pow-
er, and, in the act adopted, expressly provided that no amend-
ment should be in force until submitted to a vote of the elec-
tors and approved by them.  It was as competent for the peo-
ple to withhold from the legislature the power of amending
this act, as to withhold the power of amending the constitu-
tion itself.  And without such a provision, the reserva-
tion of the power to enact the law in the first instance
would seem to have been a mere idle ceremony.  Chapter 47,
Gen. Laws of 1855, was never submitted to a vote of the peo-
ple, and we must consequently hold that its provisions, some
of which are now found inserted in the Revised Statutes, are
not in force.

We do not say that it is impossible for the legislature to im-
pose any new duties on banking corporations in common with

others, as incidental to the exercise of other acknowledged powers of legislation. Possibly such duties might be imposed in the exercise of the police power. But if such legislation were sustained, it would be upon the ground that it was not an amendment of the Banking Law, but a proper exercise of power outside of the scope and object of that, and by which its provisions were in no way affected. But the act of 1855, above referred to, professed to amend the Banking Law, and the nature of its provisions is such that it can only be sustained as an amendment to that law.

Holding, therefore, that it is not in force, it follows that the defendants could not have been compelled to execute the warrant of attorney upon which this judgment was entered. Yet they did voluntarily execute it. And having done so, if the judgment entered upon it is in all other respects regular and just, we do not think it should necessarily be set aside merely because the defendants could not have been compelled to execute the warrant of attorney. The defendants might have gone into court and confessed judgment, yet they could not have been compelled to. But if they had done so, the mere fact that they could not have been compelled to, would be no good reason for setting the judgment aside. It is equally true when they authorize another to confess judgment for them.

The counsel for the respondents contended that the bank comptroller was not the proper person to enter up these judgments; that his duty in such a case as is averred in the complaint is prescribed by section 25 of the original Banking Law of 1852, which has not been changed, and which requires the comptroller, in such a case, to apply to the circuit court of the county where the bank is located for the appointment of a receiver &c. I think his construction of this section is correct, and that, under the proviso to be found in it, a stockholders' bond like the one in question is not such a security as the comptroller is required to reserve and sell, but that it would

properly pass to the receiver to be enforced by him in an ac-
tion.    The securities which the comptroller is required to sell
are obviously those required to be deposited under the pro-
visions now found as sections 22 and 23, chap. 71, R. S. 1858,
being of the kind usually transferred in the stock markets.
And it is obvious from the language of section 25 above re-
ferred to, now found as sec. 40 of the chapter just cited, that
all securities except those reserved by the proviso were in-
tended to be passed to the receiver to be enforced by him.
Such, therefore, being the mode prescribed by the original
Banking Law, I think that the provision now found as sec. 44,
requiring the comptroller to proceed upon the bond, never hav-
ing been submitted to the people, is not in force, and that the
proper course would have been to have had a receiver appoint-
ed and that he should have entered up this judgment.

But the judgment would have been the same as it now is.
And my brethren are of the opinion that although, strictly
speaking, it should have been entered up by the receiver, still
the fact that it was entered by the comptroller does not nec-
essarily avoid it, but that it may be allowed to stand and be
enforced by a receiver hereafter appointed if necessary.    I
have assented to this conclusion, though with considerable
doubt and hesitation.    True, the objection does not reach the
merits or justice of the judgment; but to disregard it is cer-
tainly tolerating considerable latitude in the mode of arriving
at what the statute provides for.

The objection that no notice was served upon the bank is
not sustained by the affidavits of the president and cashier.
They swear merely that no such notice as the law required
was served, which is not a denial that a notice was served, but
fairly implies that one was served, while it asserts only that in
their opinion it was not such an one as the law required.

The original Banking Law (sec. 25) authorizes this proceed-
ing after the securities deposited had remained depreciated
ninety days.   This was amended by changing the word "nine-

ty " to "sixty," by the 12th subdivision of sec. 1, chap. 98, Gen. Laws of 1858, which was submitted to and approved by a vote of the people.   T e objection, therefore, that the complaint avers only that the securities remained depreciated for sixty days instead of ninety, is untenable.

The order setting aside the judgment is reversed, with costs.

A rehearing was afterwards granted, and at the January term, 1864, the cause was further argued by *H. W. & D. K. Tenney*, for the respondents, and *Winfield Smith*, Attorney General, for the appellant; and was disposed of by the following opinion.

*By the Court*, PAINE, J.   A motion for rehearing was granted in this case upon the ground that it did not appear that any bills had been delivered to the bank for circulation after the execution of the bond, a point that was not considered in the former decision.

But after an elaborate re-argument, we are of opinion that the former decision must be adhered to.   And we place it upon the ground that the supervision which courts exercise, on motion, over judgments entered upon warrants of attorney is of an equitable character, and the burden is on the party moving to show that he has been or will be subjected to some wrong or injustice, before the court will interfere.   There is a release of errors, and it is therefore in vain to point out mere technical errors or irregularities.   The courts will interfere and control these judgments to prevent wrong and injustice, but the moving party shows none.

The order setting aside the judgment is reversed, as according to the former opinion.