BROWER, Sheriff &c., vs. HAIGHT.

The banking law of this state cannot be changed or amended by a mere act of the legislature without a vote of the people.

But that law does not attempt to provide a special, separate system of remedies for wrongs committed by banks against other persons, but leaves such corporations subject to the general laws regulating remedies.

The usury law of 1859 (chap. 160, General Laws of that year) is applicable to determine the effect of the usurious contract of a bank, where the bank, while that law was in force, loaned money at a higher rate of interest than was allowed by the banking law.

Even if the law of 1859 were not applicable, no action could be maintained by a bank upon a note executed to it for money loaned in violation of the banking law.

APPEAL from the Circuit Court for *Dodge* County.

The complaint in this action alleges, in substance, 1. That in January, 1861, the defendant executed his note, payable to one Bogert or order, for $200 at thirty days, with interest at 10 per cent., which was afterwards duly transferred to the Dodge County Bank; and that $30 of the principal, and interest upon the whole amount from date, remain due and unpaid. 2. That in April, 1861, the defendant executed his note, payable to one Lawrence or order, for $70.79, at sixty days, with interest, which was indorsed by the payee before due to the Dodge County Bank; and there is due thereon and unpaid the principal sum with interest from date. 3. That on the 17th of June, 1861, the defendant was indebted to said bank in the sum of $20.31, balance due on his account overdrawn at said bank, and that sum, with interest from the last mentioned date, is still due and unpaid. 4. That in June, 1859, the defendant executed his note to one Lander or bearer for $1,500, payable in three years, with interest at *twelve* per cent., payable semi-annually at the Dodge County Bank; that said note was duly transferred before due, and became the property of the Dodge County Bank; and there is due thereon and unpaid $1,500, with interest at twelve per cent. from date. The complaint further alleges that on the 17th of June, 1861, the notes and

account above described were the property, credits and effects of the Dodge County Bank; that on that day said bank transferred, delivered and assigned the same to one Lewis and one Schuyler, assignees of said bank; that afterwards by virtue of certain writs of attachment issued out of said circuit court in certain actions against the bank (the titles of which are recited), said Lewis and Schuyler were summoned as garnishees of said bank, and its moneys, credits and effects in their hands attached; that afterwards such proceedings were had in said attachment suits, that all the property, money, credits and effects of the bank in the hands of said garnishees were ordered to be delivered to the sheriff of Dodge county; that the notes and accounts above mentioned were a part of the credits and effects so transferred to the sheriff; that the plaintiff is sheriff of said county, and the said notes and account were delivered to him in pursuance of said order; that in January, 1862, said circuit court, by order, authorized the sheriff, in his name of office, to sue for and collect said credits, notes and accounts. Judgment is therefore demanded against the defendant for the several sums alleged to be due on the notes and account above mentioned.

The defendant answered alleging that he had fully paid the Dodge County Bank the book account and the Lawrence note before the commencement of the action. As to the note for $1,500 payable to Lander or bearer, the answer alleges, in substance, that the real consideration for it was a loan of $1,500 to him from the Dodge County Bank; that the promise to pay twelve per cent. interest on such loan rendered the transaction usurious and the note void; and that said note was made payable to Lander or bearer merely as a cover for the usury. The defendant therefore prays that the note, and a mortgage made to secure the same, may be adjudged void; and that they be delivered to him, and the mortgage discharged of record.

On the trial, the plaintiff introduced evidence sustaining the allegations of his complaint. As a witness in his own behalf

he said, among other things, " I have in my possession a book of the Dodge County Bank, that shows an account against *Andrew Haight* (the defendant); I received it from Lewis and Schuyler, assignees of the bank. (Book produced). It is the Deposit Ledger." *Question :* " Does the book show a balance of an account against the defendant? " Objected to, because the book was not one of original entries, and because as to that account the sheriff had no right to bring any action. Objection overruled ; and the witness answered that the book showed a balance of $20.30 against the defendant. The defendant then introduced evidence sustaining the allegations of the answer in respect to the $1,500 note.

The defendant asked the court to instruct the jury that the usury law of 1859 applied as well to banks as to individuals, except that banks could only contract for interest at *ten* per cent. ; and that if they believed that the Dodge County Bank loaned the $1,500 in question to the defendant and took the $1,500 note for its repayment, with twelve per cent. interest expressed on the face of the note, then the note was void. These instructions were refused ; and ,the court charged the jury that there was no question of usury in this case ; that the law of 1859 expressly excepts banks from the penalty prescribed therein; but that if they should find the loan to have been made by the bank to the defendant, the plaintiff could only recover ten per cent. interest on the loan.

Verdict for the plaintiff for $1875.74 damages ; motion to set aside the verdict and for a new trial overruled ; and judgment upon the verdict ; from which the defendant appealed.

*Sloan & McFetridge*, for appellant.

*Lander & Dick*, for respondent :

In the case of *Rock River Bank v. Sherwood*, 10 Wis., 230, the opinion of the court as to the question of usury is not binding, because that question was not in the case, as the court expressly states on p. 241. The only question raised in that case was as to the power of the bank to take the note or enter

into the contract sued on. The case of *Durkee v. The City Bank of Kenosha*, 12 Wis., 216, 222, was based upon the *Sherwood* case. The question of the application of the general usury laws to banks has therefore not been determined. We do not see how those laws can be held applicable to banks without ignoring the decision in *State ex rel. Reedsburg Bank v. Hastings*, 12 Wis., 47. 2. Admitting, for the purpose of the argument, that the usury law of 1856 applied to the case of the *Bank v. Sherwood*, and that the law of 1851, ch. 172, applied to the case of *Durkee v. The City Bank of Kenosha*, still ch. 160, Laws of 1859, cannot apply to this case, because sec. 9 of that act specially exempts banks from the operation of the law.

*By the Court*, PAINE, J. That the $1,500 loan was made by the bank, the evidence leaves no room for doubt. It also clearly appears that the papers were executed to Lander as a mere cover for the violation of the law in the rate of interest. The note was therefore void for usury, if the usury law was applicable to determine the effect of a contract made by a bank in violation of the banking law. In the case of *Rock River Bank v. Sherwood*, 10 Wis., 230, the question was considered, and we there held that the usury law then in force was so applicable. The respondent's counsel now contends that the question was not involved in that case. But whether it was so or not, it was supposed to be, and was fully considered. And as it is in this case, we deem it necessary only to say that we are satisfied of the correctness of the conclusion there arrived at upon this point. That conclusion is said to be irreconcilable with our decision in *Reedsburg Bank v. Hastings*, 12 Wis., 47. But we are unable to see any conflict.

In that case it was held that the provision of the constitution concerning the rule of taxation was designed as a limitation on the legislative power established by the constitution, and not on the power of the people acting in their primary sovereign capacity; and that it could not be applied to invalidate the

provisions of the banking law, which had been enacted by the people in their sovereign capacity in the same manner in which they had enacted the constitution itself. But here there is no question about invalidating or affecting any provision of the banking law, either by applying to it any clause of the constitution or any subsequent statute. The respondent's counsel is undoubtedly right in assuming it as a necessary consequence of the decision in the Reedsburg Bank case, that a mere act of the legislature is not capable of changing or amending the banking law; and we have so decided in *Van Steenwyck v. Sackett*, 17 Wis., 645. But there is no such question presented here, and it by no means follows that because that law cannot be amended by the legislature, the banks existing under it cannot be affected by or subjected to any other law. On the contrary it is very obvious that they may be and are. Thus the mode and measure of redress for most wrongs that may be committed by banks in common with other persons, are not provided for in the banking law, but are to be looked for in the general legislation concerning remedies. And they are changed, as against banks, whenever that general legislation is changed. Thus, if a bank leases premises, and refuses to deliver possession on the expiration of the lease, it is not in the banking law that the remedy is to be found, but in the statute concerning unlawful detainer. And if that statute should be changed and rendered more stringent, imposing new penalties on the lessee for the wrong, banks would be subjected to the new statute, like all other persons. And it would not do for them to say that no such liabilities were imposed by the banking law, and the legislature could not amend that law, and therefore they were not subject to the new statute. The obvious answer would be that such a statute was no attempt to amend the banking law; no attempt to change or impair any of its provisions or interfere with any rights conferred by it; no attempt to legislate upon a matter which that law had undertaken to regulate. That law provided the terms and

conditions on which the business of banking might be carried on. It did not attempt—and it would have been exceedingly unreasonable for it to have done so—to provide a special separate system of remedies against banks for wrongs which they might commit against others. It designed to leave them subject, like all other persons, to the general laws upon those questions.

Other instances might be referred to illustrating the correctness of this position. Thus, if a bank should refuse to discharge a mortgage which had been paid, it would be liable to the penalty given by the law upon that subject. And that law might be changed and it would be still liable. If it should maintain a nuisance on its premises, or create one on the premises of another, it would be subject to the appropriate remedies.

The question involved here falls strictly within this distinction. In applying the usury law to a contract made by a bank in violation of its charter, there is no attempt to amend or interfere in any way with the banking law. It is only allowing the legislature to say what shall be the effect if the bank violates that law and the general law of the state, and that in respect to a matter where the banking law itself made no attempt to regulate it. That this is fully within the province of the legislature there can be no room for doubt.

But the respondent's counsel further contends that even though it was correctly decided that the usury law of 1856 was applicable to the usurious contract of a bank, yet the same cannot be held of chapter 160, Laws of 1859, which was in force when this contract was made. This is claimed in consequence of section 9 of that chapter, which says: " This act shall not in any manner affect the operation of an act to authorize the business of banking, approved April 19, 1852." It is argued that this is equivalent to a provision excepting banks from the operation of the act. But the language will not bear that interpretation. It is only a disclaimer by the legislature

of any intention to interfere with the banking law, and could only have been inserted to prevent any claim that the act might otherwise have the effect of allowing banks, like other persons, to contract for twelve per cent. instead of ten, to which rate they were limited by the banking law. The section was unnecessary, as the act could not affect the operation of the banking law. But although, from excess of caution, the legislature unnecessarily provided that their act should not have that effect, that was by no means equivalent to saying that if banks should violate its provisions, and the banking law, they should not be subjected to its operation.

But it seems to be immaterial, so far as the right to maintain the action on this note is concerned, whether the usury law of 1859 or the banking law is held applicable. In the case of the *Rock River Bank v. Sherwood* the counsel contended for the application of the usury law of 1856, under which a usurious contract was good for the principal, so as to avoid the effect of a class of decisions which hold that where a corporation makes a contract in violation of its charter, it is totally void for mere want of power to make it, independent of the question of usury. These cases are referred to in the opinion of Justice COLE, 10 Wis., 237, and their applicability was only denied by holding, as we then did and now do, that the effect of such contracts made by a corporation was to be determined by the general law as to the effect of all usurious contracts. But in this case it seems immaterial, as the law of 1859 made the contract void, the same conclusion which must have been arrived at if that law was held inapplicable, and the question determined by the charter.

The right of the sheriff to sue on the account was disposed of by the decision of this court in *Brower v. Smith et al.*, 17 Wis., 410. He could not sustain the action.

The judgment is reversed, with costs, and the cause remanded with directions to enter judgment for the defendant.