# RUSK, Bank Comptroller, vs. VAN NORSTRAND.

BANKING LAW. *Bank Comptroller to bring suit on stockholders' bond—Sec. 6, ch. 47, Laws of 1855, invalid—Original bond binding, although withdrawn and another filed.*

1. The bank comptroller, and not the receiver appointed under sec. 40, ch. 71, R. S., is the proper person to bring suit upon the stockholders' bond described in sec. 33 of that chapter. *Van Steenwyck v. Sackett,* 17 Wis., 645, overruled as to this point.

2. Sec. 6, ch. 47, Laws of 1855, (which provides that the bank comptroller may permit the original stockholders' bond deposited with him by any bank to be withdrawn, and a new bond substituted in its stead), is not a valid enactment, never having been submitted to a vote of the people.

8. Where the comptroller, in pursuance of that section, permitted such a bond, executed by defendant, to be withdrawn in 1860, and another, not executed by him, to be substituted, such withdrawal and substitution being illegal, defendant was still liable on his bond.

APPEAL from the Circuit Court for *Jefferson* County.

Action by the bank comptroller of this state upon a stockholders' bond, executed by the defendant in October, 1860, to secure the holders of bills of the Koshkonong Bank. The allegations of the complaint showing a breach of the conditions of the bond, are stated, in substance, in the opinion. It appears from the complaint that at the time of executing the bond, defendant was sole owner of the stock of said bank; that in December, 1860, he "sold or pretended to sell" said stock to one Savage; and it is alleged that the then bank comptroller, "by mistake and misapprehension of himself and the said defendant, as to the constitutionality and validity of section 6, ch. 47, Laws of 1855, and of their respective rights and duties under said section, allowed the defendant to take and carry away said bond, upon the filing of another bond" by said Savage.

Defendant demurred, on the grounds that the action should have been brought by a receiver, and that the complaint did not state a cause of action; and he appealed from an order overruling the demurrer.

*D. F. Weymouth* (with whom was *S. U. Pinney*, of counsel), insisted that the action should have been brought by a receiver, citing *Van Steenwyck v. Sackett*, 17 Wis., 645. 2. The decision of the bank comptroller allowing a substituted bond under the act of 1855, was the law until reversed by this court; and before it was reversed, the bond sued upon was surrendered and cancelled. No action, therefore, can be maintained upon it. *Havemeyer v. Iowa Co.*, 3 Wall., 294.

*The Attorney General* (with whom were *Spooner & Lamb* and *Hopkins & Foote*, of counsel), for respondent.

COLE, J. The main question raised by the demurrer in this case, is as to who is entitled to bring this suit: whether the bank comptroller can maintain it; or whether it must be brought in the name of a receiver who may be appointed by the circuit court. The action is upon a stockholders' bond, given by the appellant to the comptroller, in conformity to the provisions of the banking law, as an additional security to indemnify the bill-holders against any loss that may be sustained in case the securities deposited with the comptroller by the banking association shall be insufficient to redeem its circulating notes. It is alleged in the complaint, that on the failure of the Koshkonong Bank to redeem its circulating notes when presented for payment, its securities were sold, and the proceeds of the sale applied ratably to the payment of the outstanding bills; and that there still remains due upon said bills issued after the execution of the bond in suit, at least the sum of $2249, and interest from the time payment of the notes was demanded. So a breach of the conditions of the bond is shown by the facts stated in the complaint; as, after a proper application of the securities pledged, it appears that the circulating notes are not paid in full. A right of action exists upon the bond therefore; and the question is, who must enforce it? After a careful consideration of the case, we are satisfied that the bank comptroller is the proper party to bring the suit, and not a receiver.

In the first place it is to be observed, that the stockholders' bond, under the law, is given to the bank comptroller, and runs in his name, although entirely for the benefit of the bill-holders. And as it is made payable to him, by all the rules and analogies of the law, he would seem to be the proper party to bring the suit upon it for a breach of its conditions. Being the obligee named in the bond, we cannot see why he is not a "trustee of an express trust," within the meaning of the statute. In such a case, the trustee brings the action without

joining with him the real party in interest. Sec. 14, chap. 122.

The right of action, therefore, upon the stockholders' bond would seem to be in the comptroller, unless there is something in the other provisions of the statute which takes it out of the ordinary rules upon this subject. It is claimed in behalf of the appellant that there is such a provision, and that the banking law itself requires that the action be brought by a receiver, and not in the name of the comptroller. The particular provision of the banking law referred to, is section 40, chap. 71, R. S., being sec. 25, chap. 479, Laws of 1852. That section provides, that in case the current market value of any portion of the securities deposited by any banking association should become depreciated &c., the comptroller was required to notify the bank of such depreciation; and if the banking association should neglect or refuse, for thirty days after the notice, to make good its securities by additional ones, it should be deemed to have forfeited its rights as a banking association : and it is made "the duty of the comptroller to make application to the circuit court of the county in which said association may be located, to have receivers appointed as provided by section nine, chapter seventy-eight, title thirteen of the revised statutes, who shall have the powers and perform the duties that are required by that section; but this section shall not be so construed as to require the surrender to such receivers of any securities deposited with the treasurer or comptroller pursuant to this chapter ; and the comptroller shall sell such securities for the payment of the bills or notes issued by the banks, as he is required to do in other cases." Section 9, chapter 78, here referred to, provides that when the charter of any corporation expires or is annulled, the circuit court of the county in which such corporation carries on its business, on application &c., "may appoint one or more persons to be receivers or trustees of and for such corporations,

*to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation."* Now it is said, to carry out these provisions of law, the stockholders' bond should properly go into the hands of a receiver to be appointed by the circuit court, and that he should bring all actions upon it for a breach of any of its conditions. In answer to this it is insisted, that the bond given the comptroller for the indemnity of the the bill-holders would not and should not go to the receiver, because it is in no sense a part of the " estate," or " effects," or " property " of the bank ; that it is not even the evidence of a debt due *to* the bank ; that it is no more a part of the assets of the bank than the liability of the guarantor of a note is part of the assets of the maker of the note. We think that this answer is full, and entirely conclusive upon the point. For it seems to us utterly impossible to say, in any proper sense of the word, that a stockholders' bond, given merely and solely to secure the bill-holders against any loss they may sustain in case the securities pledged prove insufficient to redeem the outstanding circulation, is a part of the " estate," " effects " or " property " of the corporation. It is strictly a contract of indemnity, to make good the obligations of the banking association. The proceeding for the appointment of a receiver is to obtain a sequestration of the property, things in action and effects of the corporation, for the benefit of its creditors. It is generally to carry out and effect an equal distribution of the estate, real and personal, belonging to a corporation, among its creditors. And if the stockholders' bond should pass into the hands of a receiver, and he should bring suit upon it, he would probably have to do so in the name of the comptroller. *O. & M. R. R. Co. v. I. & C. R. R. Co.*, Am. Law Reg., October, 1866, p. 733 ; *Truman v. Winchester*, 10 S. & M., 577. But we can really see no sufficient reason for holding that the stockholders' bond should pass to the receiver, since it is not in any just sense of the term prop-

erty, estate or effects of the banking association. It is given to the comptroller for the benefit of the bill-holders; and he is the proper party to enforce it in case of a breach. We are referred, however, to the case of *Van Steenwyck v. Sackett*, 17 Wis., 645, as establishing the doctrine that a receiver, appointed in pursuance of the above provisions of law, is the proper person to bring an action upon a stockholders' bond. There are some things in the opinion in that case, which was delivered by Mr. Justice PAINE, which go far to sustain this view. But an examination of that case will show that in disposing of the cause it did not become necessary to decide this question. The point before the court on the record was, whether the judgment which had been entered up in that case in favor of the comptroller on the warrant of attorney should be set aside. And the present members of the court, who participated in the decision, thought that, even conceding that the judgment should have been entered up by the receiver instead of the comptroller, this fact did not necessarily avoid it; that the control which courts exercise over judgments entered upon warrants of attorney is of an equitable character; and that it was incumbent on the party moving to set it aside to show that he would be subjected to some wrong or injustice unless it was vacated. No such reason was shown in that case, and therefore the judgment was permitted to stand. Taking this view of the case, we did not examine as carefully as we otherwise should have done, the question whether the receiver was the proper party to bring suit upon the stockholders' bond, or not. At all events, we do not, under the circumstances, feel concluded upon the point; and as we are now satisfied that the comptroller, and not the receiver, must bring the suit, we must so hold, notwithstanding any *dicta* to the contrary in *Van Steenwyck v. Sackett.*

It is also suggested, that, but for the latter part of section 40 above cited, the securities deposited to redeem the bills

would pass, with the other estate and property of the banking association, to the receiver when appointed. Quite likely this would be so, because those securities are strictly and really the property of the association. They would therefore naturally have gone to the receiver, who was authorized to take charge of the estate, effects and property belonging to the corporation, unless it had been otherwise provided. But we cannot see that this strengthens in the least the argument that the stockholders' bond was intended likewise to be transferred to the receiver. For while this bond might be available to the bill-holders to save them from loss on the circulation, yet, as we have said, it could not properly be said to be property of the bank.

The complaint in this case further shows that the comptroller, in December, 1860, permitted the appellant to withdraw the stockholders' bond which he had given, the comptroller receiving in lieu thereof another bond given by one Isaac Savage. This exchange was made under section 6, chap. 47, Laws of 1855, which provides that the bank comptroller may in his discretion permit the original stockholders' bond to be withdrawn, and a new bond substituted in its stead, which should be as binding and obligatory upon the parties executing it as the original bond. The question therefore is : Can the 6th section be sustained, since the law of 1855 was never submitted to a vote of the people ? In *Van Steenwyck v. Sackett* a majority of the court held that it was incompetent for the legislature to amend the banking law without submitting the proposed amendment to a vote of the people. I have always entertained a little different opinion as to the power of the legislature over the subject. I shall not go into any general statement of my views upon the question at this time. It is sufficient to say that I have thought the legislature might pass such laws as experience might prove necessary and essential to carry out the principles of the original banking law, and which should more effectually guard the public against a system of

unsound and wildcat banking. I do not think it could pass any law which would injuriously affect the securities given by the banking law. But while it could not impair any provisions of that law, intended to protect the public against an unsound system, it might remedy defects in the law. It might pass laws to support and enforce the banking law; laws which should afford greater protection and security to bill-holders; laws which would render the original law more efficient, more stringent, less liable to be evaded, and which should give more effectual remedies to enforce its provisions. It always seemed to me that the legislature had the power to make amendments of this character. I therefore could sustain most of the provisions of the law of 1855. But, according to my view, the sixth section is a very questionable enactment. It affects materially the principle of the banking law, and might work a substantial injury to the bill-holders. I doubt whether the people would be willing to give any officer of the state authority to exchange these indemnifying bonds. I therefore fully concur with my brethren in holding this section of the law of 1855 invalid, because it was never adopted by a vote of the people.

It follows from these views that the demurrer was rightly overruled.

*By the Court.*—The order of the circuit court is affirmed.