In re Koetting.

*March 13 — April 3, 1895.*

*Banks and banking: Receiving deposits when insolvent: Punishment: Amendment to banking law: Submission to people: Construction of statute.*

1. The general banking act (ch. 479, Laws of 1852; sec. 2024, S. & B. Ann. Stats.) cannot be materially amended, except by a law submitted to and approved by the people.

2. Banks organized under the general banking act are subject to the general statutes and rules of law which apply to them alike with other corporations and persons, provided there be no impairment of the powers and privileges given them by said act.

3. Sec. 4541, R. S. (providing that any officer or agent of any bank or of any person or corporation engaged in banking, etc., or any per-

son engaged in such business, who shall receive on deposit any money, etc., when he knows or has good reason to know that such bank, or corporation, or person is unsafe or insolvent, shall be punished by imprisonment, etc.), is not an amendment to the banking act, but is a general law, applicable alike to banks and to natural persons, and does not impair or affect any banking power or privilege conferred by said act. Its submission to and approval by the people was, therefore, not necessary.

4. The addition of the word "unsafe" to the previous law (ch. 213, Laws of 1876), so that in sec. 4541, R. S., the words defining the condition of the bank are "unsafe or insolvent," instead of merely "insolvent," was not a substantial change, the words being used interchangeably and as the legal equivalents of each other.

HABEAS CORPUS. The sheriff of Milwaukee county, to whom the writ was directed, made return thereto, and the petitioner demurred to such return. *Demurrer overruled and petitioner remanded.*

For the petitioner there was a brief by *W. C. Williams*, and oral argument by *Mr. Williams, Mr. T. W. Spence*, and *Mr. P. G. Lewis.*

For the respondent there was a brief by the *Attorney General*, and *L. K. Luse*, Assistant Attorney General, and a separate brief by *A. C. Brazee*, district attorney, and *A. W. Bell*, assistant district attorney; and the cause was argued orally by the *Attorney General, Mr. Luse*, and *Mr. Bell.*

WINSLOW, J. *John B. Koetting* was on the 21st day of July, 1893, the cashier and part owner of the South Side Savings Bank, a state banking corporation then doing a banking business in Milwaukee. He is held in custody by the sheriff of Milwaukee county upon an information charging him with having on said last-named day received for deposit in said bank a certain sum of money, the said bank then being unsafe and insolvent, and he then knowing and having good reason to know that such bank was unsafe and insolvent, contrary to the provisions of sec. 4541, R. S.

Upon his application a writ of *habeas corpus* was issued out of this court, and the sheriff having made return showing that the detention of the petitioner was by virtue of a prosecution under R. S. sec. 4541, as before stated, the petitioner demurred to the return as insufficient in law to justify any imprisonment; claiming that said section is in legal effect an amendment to the banking law of the state, and hence is void because it has never been submitted to a vote of the people. This is the vital question which is presented for decision in this case, and to this we address ourselves.

The constitution of the state reserves to the people the power to grant bank charters or enact a general banking law. Secs. 4 and 5 of art. XI of the constitution are as follows:

"Section 4. The legislature shall not have power to create, authorize or incorporate, by any general or special law, any bank or banking power or privilege, or any institution or corporation having any banking power or privilege whatever, except as provided in this article.

"Section 5. The legislature may submit to the voters, at any general election, the question of 'bank,' or 'no bank,' and if at any such election a number of votes equal to a majority of all the votes cast at such election on that subject shall be in favor of banks, then the legislature shall have power to grant bank charters, or to pass a general banking law, with such restrictions and under such regulations as they may deem expedient and proper for the security of the bill holders. Provided, that no such grant or law shall have any force or effect until the same shall have been submitted to a vote of the electors of the state, at some general election, and been approved by a majority of the votes cast on that subject at such election."

Pursuant to the provisions of ch. 143, Laws of 1851, the question of bank or no bank was submitted to the people at the general election in that year, and decided in the affirma-

tive; and at the following session of the legislature a general banking law was passed, being ch. 479, Laws of 1852, which act was ratified by the people at the general election following, and thus became a valid law. This act provided for the election of a bank comptroller, and prescribed his duties, and authorized the formation of associations "to establish offices of discount, deposits and circulation," and to become incorporated upon certain terms and conditions. This law will be found incorporated in the Revised Statutes of 1878, save so far as it has since been changed. S. & B. Ann. Stats. sec. 2024. This act contained no penalties or punishments for fraudulent banking, save a penalty for putting in circulation unauthorized notes or bills. Sec. 48 of the act provided that no amendment thereto should take effect until submitted to a vote of the people and approved by a majority of the votes cast on that subject.

This court has had occasion in a number of cases to pass upon questions arising under this act and its amendments. *State ex rel. Reedsburg Bank v. Hastings*, 12 Wis. 47; *Van Steenwyck v. Sackett*, 17 Wis. 645; *Brower v. Haight*, 18 Wis. 102; *Rusk v. Van Norstrand*, 21 Wis. 161; *Rock River Bank v. Sherwood*, 10 Wis. 230; *Porter v. State*, 46 Wis. 375. The result of these decisions, so far as necessary to the present discussion, seems to be the establishment of two general propositions, which may be briefly stated as follows: First, the general banking act cannot be materially amended except by a law submitted to and approved by the people; second, banks organized under that law are subject to general statutes and rules of law which apply to them alike with other corporations and persons, provided there be no impairment of the powers and privileges given them by the banking law.

This was the condition of the law when ch. 213, Laws of 1876, entitled "An act to prevent fraudulent banking," was passed by the legislature. This act provides, in substance, that no banking firm or corporation, or person engaged in

In re Koetting.

the banking business, should receive deposits when insolvent, and, if such deposits were received, the person or officer so receiving such deposit, knowing of such insolvency, should be punished by imprisonment in the state prison not exceeding ten years, or in the county jail not exceeding one year, or by fine not exceeding $10,000, or by both fine and imprisonment. By the revision of the statutes in 1878 the form of this law was changed, and it appears in its amended form as sec. 4541, R. S. 1878, and is as follows: "Any officer, director, stockholder, cashier, teller, manager, messenger, clerk or agent of any bank, banking, exchange, brokerage, or deposit company, corporation or institution, or of any person, company or corporation engaged in whole or in part, in banking, brokerage, exchange, or deposit business, in any way, or any person engaged in such business in whole or in part, who shall accept or receive on deposit, or for safe keeping, or to loan from any person any money, or any bills, notes, or other paper circulating as money, or any notes, drafts, bills of exchange, bank checks or other commercial paper for safe keeping or for collection, when he knows, or has good reason to know, that such bank, company or corporation, or that such person is unsafe or insolvent, shall be punished by imprisonment in the state prison not more than ten years nor less than one year, or by fine not exceeding ten thousand dollars." Neither ch. 213, Laws of 1876, nor sec. 4541, was ever submitted to, or approved by a vote of, the people.

It has been decided by this court that this law is a valid law, and applies to a private banker who receives money for deposit, but the question here argued was not suggested or considered in that case. *Baker v. State,* 54 Wis. 368.

It will be readily noticed that the wording of the act of 1876 was somewhat altered in the revision, but it is clear that the revisers did not contemplate that any material change had been made in the law. This appears from the

fact that they placed at the foot of the new section the words, " Sec. 1, ch. 213, 1876," clearly indicating that there was supposed to be no change in substance. Nor do we think there was any such change. It is true, the word " unsafe " has been added, so that the words which define the condition of the bank are the words " unsafe or insolvent," instead of the single word " insolvent." We do not regard this, however, as a material change in meaning. The words are evidently used interchangeably and as the legal equivalents of each other. In fact, a solvent bank cannot be an unsafe bank. If it be solvent it is, in legal effect, safe. In case of a prosecution under the present section, it seems perfectly clear that, if a defendant were able to show that the bank was solvent at the time of the deposit, he would thereby establish a perfect defense, because, if solvent, it was legally safe, and it could not be said that an officer receiving a deposit in a solvent bank either knew or had good reason to believe a fact which did not exist. If the fact of solvency is a perfect defense, then the fact of insolvency is an essential and indispensable element of the offense; and it results necessarily that the offense consists in receiving deposits in a bank in fact insolvent, and which the person receiving the deposit knew, or had good reason to know, was insolvent.

This being the offense created by the statute, the question simply is whether the statute materially amends the general banking law or takes from banks any rights or privileges which the banking law conferred upon them. Stated in another way, the question is whether the banking law authorized banking by an insolvent bank. Did the people so carefully reserve to themselves the right to establish banks, only to enact a law authorizing insolvent banks to prey upon them? This is the ultimate question. Certainly, there is nothing in the banking law which authorizes the idea that such a right is expressly or impliedly conferred. Furthermore, there were in existence, at the time of the enactment of the banking law, plain and clear provisions for the sum-

mary winding up of the business of any banking or insurance corporation as soon as it becomes insolvent, either upon application of the attorney general or of any creditor or stockholder. R. S. 1849, ch. 114, secs. 9–12 *et seq.;* R. S. 1878, secs. 3218 *et seq.* These provisions contemplate and require the forfeiture of the charter and immediate suspension of all business by the corporation as soon as application can be made to the proper court and the insolvency proven. No question has ever been raised as to the validity of these provisions, nor is it perceived how any such question could be raised. They have been acted upon and enforced in numerous cases in this court, which it is unnecessary to cite.

The fact is, then, that the banking law did not either expressly or impliedly authorize the receiving of deposits by an insolvent bank, and the general laws which were in existence at the time of the enactment of the banking law, and ever since that time, provide for the immediate closing up of an insolvent bank as soon as the fact is known. Clearly, it must result that an insolvent bank has no franchise to do business. If it has no such franchise or privilege, then it is deprived of no right or privilege by the passage of a law punishing an officer thereof for receiving a deposit when it is insolvent to his knowledge. This law deprives the bank of nothing which it had before, and affects no right guarantied to it by the general banking law. It is not, therefore, an amendment to the banking law, but a general law, applying alike to banks and to natural persons, which affects no banking right or privilege, but simply punishes an act fraudulent in its nature, for which the banking law provided no punishment. Such a law is clearly within the power of the legislature to enact. *Brower v. Haight,* 18 Wis. 102.

Our conclusion is that the demurrer to the return must be overruled.

*By the Court.*— The demurrer to the sheriff's return is overruled, and the said *John B. Koetting* is remanded to the custody of the sheriff of Milwaukee county.