# CASES DETERMINED.

## January Term, 1897.

---

### THE STATE vs. SHOVE.

*January 19 — April 30, 1897.*

*Criminal law: Banks and banking: Receiving deposits when insolvent: Time certificates: Evidence of insolvency.*

1. Although a certificate of deposit is issued for money received by a bank, providing that it shall be payable one year after date with interest and shall not be subject to check, the money is nevertheless received " on deposit," within the meaning of sec. 4541, R. S., making it an offense for any officer of a bank to accept or receive money on deposit when he knows, or has good reason to know, that the bank is unsafe or insolvent.

2. The mere fact that a portion of the deposit in such a case consisted of a prior certificate held against the same bank, which was surrendered at the time, did not make the transaction essentially different from what it would have been had the whole amount been deposited in cash.

3. To prove the insolvency of a bank at the time of receiving a deposit it was proper to show the amount of deposits in the bank, including those for which time certificates not yet due had been issued, and to show, also, the other indebtedness of debtors of the bank, and the value of their commercial paper held by the bank as part of its assets.

EXCEPTIONS from the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Exceptions overruled.*

This action comes up on alleged exceptions filed by the defendant, pursuant to sec. 4720, R. S. These exceptions are

The State vs. Shove.

stated in narrative form, signed by the presiding circuit judge, accompanied by a certificate of the clerk of the court, and are to the following effect:

On April 10, 1896, the defendant was convicted, under sec. 4541, R. S., of the offense of receiving on deposit $300, April 11, 1892, at Manitowoc, and said defendant being aggrieved by certain opinions and directions of the court upon the trial in certain matters of law, and having alleged exceptions thereto, and it appearing to the court that such exceptions are material, and not frivolous nor intended for delay, which exceptions having been reduced to writing, and presented to the court during the term at which said cause was tried, and being found conformable to the truth in the case, are allowed and signed by the circuit judge presiding at such trial.    Such exceptions are as follows, to wit:

The information charged the offense substantially as follows: "That on the 11th day of April, 1892, at said county, *Theodore C. Shove* did fraudulently and feloniously accept and receive on deposit from Hattie J. Glye the sum of $300, good and lawful money of the United States, and being then and there of the value of $300, and being then and there the property of said Hattie J. Glye, and that he, the said *Shove,* at the time he so took and accepted said money on deposit in said bank, then and there knew, or had good reason to know, that the said T. C. Shove Banking Company was unsafe and insolvent and had been unsafe and insolvent for a long time prior thereto; and that the T. C. Shove Banking Company was then and there insolvent."    It was further charged in the information that the T. C. Shove Banking Company was a domestic corporation, engaged in banking at Manitowoc; that said *Shove* was the president of such banking company, and the manager thereof, and was a director and stockholder in said bank.

Upon the trial the state was permitted to prove and offered in evidence the following facts: First. That April

The State vs. Shove.

11, 1892, Hattie J. Glye came into the T. C. Shove Banking Company's office, at Manitowoc, with a certificate of deposit theretofore issued by said banking company to her for the sum of $200, upon which was due $10 interest, which said certificate of deposit was on that day due; that said Glye surrendered said certificate, upon which was then due $210, principal and interest, to Fred H. Harris, the cashier of said bank, and also gave such cashier $90 in cash, and took a certificate of deposit of said bank for $300, which is dated April 11, 1892, and is to the effect that said Glye had deposited in that bank $300, payable to the order of herself on the return of the certificate "one year after date, with interest at the rate of 5% per annum," and that such deposit was not subject to check. It also appeared in evidence that the defendant was at the time aforesaid, and had been for a long time prior thereto, the president and manager of said bank; that, at the time of the transaction above stated, he was in the banking office of said bank, but it did not appear in evidence that he personally knew of the said transaction at the time. The foregoing is all the evidence offered by the state of the deposit alleged in the information,— to all of which the defendant objected as incompetent and immaterial, for the reason that the transaction did not amount to a deposit, within the meaning of sec. 4541, R. S., but was a loan, and the evidence does not tend to show the commission of any offense by the defendant under the charge made, which objections were then overruled, and the defendant duly excepted.

The state was also allowed to put in evidence that April 11, 1892, there were deposited in said bank demand deposits, subject to check, for the sum of $113,918.34, also time certificates of deposit amounting to $308,627.09, of which there were due April 11, 1892, $8,023, and would become due on or before August 11, 1892, $93,504, and demand certificates amounting to $63,000, to which evidence the defendant ob-

The State vs. Shove.

jected as incompetent and immaterial, which objection was overruled, and the defendant excepted. It also appeared from the evidence that of the certificates of deposit that were due April 11, 1892, no demand had been made for the payment of any of them. For the purpose of showing the insolvency of the bank at or about the time alleged in the information, the state was permitted to put in evidence and show the indebtedness of one of the debtors of the bank other than those hereinafter mentioned, and due April 11, 1892; that one of said debtors was indebted to other persons than the bank to the amount of $13,000; that Jacob Fliegler owed the bank April 11, 1892, $86,000; that the Manitowoc Manufacturing Company owed the bank April 11, 1892, $206,000; that Albert Landreth owed the bank April 11, 1892, $13,000; that the Albert Landreth Seed Company owed the bank at said time $19,000; that F. H. Haley owed the bank $26,000,— a part of which said indebtedness of each of said named parties was evidenced by their commercial paper in the usual form, and a part in the nature of overdrafts. The state was permitted to put in evidence testimony of divers witnesses, of Manitowoc, as to the value of the paper of said persons and corporations last above named, April 11, 1892, and who testified that they knew the value of said paper, and that, in their opinion, said paper was of little or no value as a bank asset at or prior to April 11, 1892,— to all of which evidence the defendant objected, which said objections were overruled, and the defendant excepted.

The foregoing exceptions were allowed and certified to by the presiding judge in the summary mode as provided by sec. 4720, R. S.

For the plaintiff there was a brief by the *Attorney General* and *John L. Erdall*, Assistant Attorney General, and a separate brief and oral argument by *A. J. Schmitz*, assistant district attorney, and the *Attorney General*.

For the defendant there was a brief by *F. A. Gilman*, *Benj. M. Goldberg*, and *Chas. W. Felker*, and oral argument by *Mr. Gilman* and *Mr. Goldberg*. They contended, *inter alia*, that the transaction in question was not a deposit but a loan, the certificate being in effect a promissory note. *Catlin v. Savings Bank*, 7 Conn. 495, 496; Standard Dict. "Deposit;" Bouvier, Law Dict.; *Klauber v. Biggerstaff*, 47 Wis. 551, 554; *Curran v. Witter*, 68 id. 16, 19, 20; *Curtis v. Leavitt*, 15 N. Y. 9, 263; *Leavitt v. Palmer*, 3 id. 19, 34; *Smith v. Strong*, 2 Hill, 241, 242; *Payne v. Gardiner*, 29 N. Y. 146, 167; *Bank of Peru v. Farnsworth*, 18 Ill. 563–565; *Barnes v. Ontario Bank*, 19 N. Y. 161; *Downey v. Hicks*, 14 How. 240; *Lansing v. Wood*, 57 Mich. 201, 209, 210; *Cate v. Patterson*, 25 id. 191–194; *Burrows v. Bangs*, 34 id. 304; *Tripp v. Curtenius*, 36 id. 494, 496; *Brummagim v. Tallant*, 29 Cal. 503; *Poorman v. Mills & Co.* 35 id. 118, 120; *McMillan v. Richards*, 9 id. 365, 418; *Kirkwood v. First Nat. Bank*, 24 L. R. A. 444; *First Nat. Bank v. Security Nat. Bank*, 15 id. 386; *Bear's Appeal*, 4 id. 609, 611; *Cassidy v. First Nat. Bank*, 30 Minn. 86; *Pardee v. Fish*, 60 N. Y. 265, 268, 270; *Munger v. Albany City Nat. Bank*, 85 id. 580. As to what constitutes insolvency and the manner of showing it, see *Daniels v. Palmer*, 35 Minn. 348, 349; *Bell v. Ellis*, 33 Cal. 625; *Toof v. Martin*, 13 Wall. 46–48; *Dutcher v. Wright*, 94 U. S. 557; *Buchanan v. Smith*, 16 Wall. 308; *Dodge v. Mastin*, 17 Fed. Rep. 665; *Akers v. Rowan*, 10 L. R. A. 714; *McKown v. Furgason*, 47 Iowa, 637; 37 Cent. L. J. 147; *State v. Sattley*, 131 Mo. 464.

The following opinion was filed February 23, 1897:

CASSODAY, C. J. The defendant was, at the time in question, the president, manager, director, and stockholder of the "T. C. Shove Banking Company." As such, he was convicted of having received on deposit April 11, 1892, the $300 mentioned, contrary to sec. 4541, R. S. Eliminating from

that section what is not applicable here, and it declares, in effect, that "any officer, director, stockholder, . . . manager, . . . or agent of any bank, . . . *who shall accept or receive on deposit, or for safe-keeping, or to loan,* from any person, any money, or any bills, notes, or other paper circulating as money, or any notes, drafts, bills of exchange, bank checks or other commercial paper *for safe-keeping or for collection, when he knows, or has good reason to know,* that such bank . . . *is unsafe or insolvent,* shall be punished by imprisonment," etc. The constitutionality of this statute has been repeatedly sustained by this court, and its validity is not now challenged. *Baker v. State,* 54 Wis. 368; *In re Koetting,* 90 Wis. 166.

1. The principal contention of counsel for the defendant is to the effect that the certificate reciting that Hattie J. Glye had "deposited" in the bank $300, payable *one year* from the date thereof, and then with interest, and not subject to check, made the transaction a loan, and not a deposit, and hence not within the condemnation of the statute. The argument is that the bank simply borrowed the money and gave its promissory note therefor, due in one year from date, and therefore did not accept or receive the money on deposit, nor for safe-keeping, nor to loan, nor for collection, within the meaning of the statute.

We assume that the bank had authority, as incident to its necessary powers to carry on such business, to issue such time certificates. S. & B. Ann. Stats. sec. 2024, subsec. 21; *Rockwell v. Elkhorn Bank,* 13 Wis. 653; *Ballston Spa Bank v. Marine Bank,* 16 Wis. 120; *Curtis v. Leavitt,* 15 N. Y. 9, 295, subd. 5. In construing the statute in question, this court has, among other things, said: "The manifest object of the statute in question was to suppress the business of banking or brokerage by any insolvent person, company, or corporation. It therefore inflicts punishment upon persons so engaged, knowing the fact. . . . A bank implies capi-

The State vs. Shove.

tal, and capital invites confidence. A man holding himself out as a banker or broker thereby gives public proclamation that he has money, and property readily converted into money, in his possession and subject to his control, and for that reason he may be safely trusted. . . . For an insolvent banker, company, or corporation to continue the business of banking is to hold out assurances of responsibility and surplus capital where neither exists. To do so knowingly is to secure the confidence, and hence obtain the money, of the ignorant and unwary by an implied deception. It is the old story of securing the victim by a display of false colors. To suppress this mischief, to save the public from being induced to deposit money with such insolvent by the implied assurance of responsibility and wealth essential to the business, when they do not in fact exist, was the evident purpose of this statute." *Baker v. State*, 54 Wis. 376, 377. These views have been expressly sanctioned in *Meadowcroft v. People*, 163 Ill. 56. Judge JENKINS has expressed similar views in *In re Cook*, 49 Fed. Rep. 842; *S. C. Cook v. Hart*, 146 U. S. 183. As said by Mr. Justice WINSLOW in a recent case: "The offense consists in receiving deposits in a bank in fact insolvent, and which the person receiving the deposit knew, or had good reason to know, was insolvent." *In re Koetting*, 90 Wis. 171.

Money deposited in a bank is, in law, a loan by the customer to the bank. *Sims v. Bond*, 2 Nev. & M. 608; *S. C.* 5 Barn. & Adol. 389. "All deposits made with bankers may be divided in two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter, and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any

part thereof, on demand." *Marine Bank v. Fulton Bank,* 2 Wall. 256. See, also, *Planters' Bank v. Union Bank,* 16 Wall. 483; *Oulton v. Savings Inst.* 17 Wall. 109; *Commercial Bank v. Armstrong,* 148 U. S. 59. Ordinarily, the money so accepted or received by such bank or banker is accepted or received on deposit. In order to make the section broad enough to cover every case where money is so accepted or received by a person so engaged in the business of banking when he knows, or has good reason to know, that such bank or banker is unsafe or insolvent, there were added to the words "on deposit" the words "or for safe-keeping, or to loan," together with the other words mentioned, including the words "or for collection," as stated. The purpose of the section, therefore, seems to be to punish every person engaged in the business of banking who, knowing, or having good reason to know, that such bank or banker is unsafe or insolvent, nevertheless accepts or receives money in such business, either "on deposit, or for safe-keeping, or to loan," or accepts or receives such paper "for collection." These four purposes accompanying such acceptance or receipt of money or commercial paper for collection would seem to be sufficiently broad and general to include every purpose for which the bank or banker could accept or receive money or commercial paper for collection. If making the certificate of deposit payable in one year takes the case out of the statute, then making such certificate payable in a month or a week or a single day would also take a case out of the statute. As short-time certificates are, ordinarily, as acceptable to customers as certificates payable on demand, it is obvious that an insolvent banker or officer of an insolvent bank, with full knowledge of such insolvency, might, by issuing such time certificates, continue such business indefinitely, without committing the offense prescribed in the statute, unless it is construed so as to cover deposits upon which such time certificates are issued, as well as those pay-

able on demand. "Where the main object and intention of a statute are clear, it must not be reduced to a nullity by the draftsman's unskilfulness or ignorance of the law, except in the case of necessity or the absolute intractability of the language used." *Salmon v. Duncombe*, 11 App. Cas. 627. "In construing statutes, the usual and proper mode is to ascertain the intention of the legislature from the language they have used, connected with the state of the law on the same subject anterior to the passage of the statute. When the courts know for what particular mischief the legislature intended to provide a remedy, it is their duty so to construe the statute as most effectually to suppress the mischief and advance the remedy." *Coster v. Lorillard*, 14 Wend. 297. "Even penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature." *U. S. v. Wiltberger*, 5 Wheat. 76; *Manitowoc Co. v. Truman*, 91 Wis. 12. See, also, *U. S. v. Freeman*, 3 How. 564, 565; *U. S. v. Saunders*, 22 Wall. 492. While a certificate of deposit payable at a fixed time in the future may technically be regarded as a loan and not a mere deposit, yet, in view of the obvious purpose of this statute, we are constrained to hold that the transaction in question was a deposit within the meaning of the statute.

2. The mere fact that a portion of the $300 consisted of a certificate of deposit held against the same bank, and the accrued interest thereon, which was surrendered at the time, did not make the transaction essentially different from what it would have been had the whole amount of $300 been deposited in cash, as recited in the certificate. The cash was present, or supposed to be present, in the bank, and was considered and treated the same as though the cashier had actually passed it over to Glye and she had immediately redeposited the same in the bank.

3. We perceive no error in the method of proving the insolvency of the bank at the time of receiving the money and

issuing the certificate of deposit in question; and that is so whether by such insolvency is meant inability to pay its debts in the ordinary course of business, or merely inability to pay in full at some future time, upon ultimately winding up its affairs. The evidence was certainly material, and relevant and pertinent to the issue on trial, and hence competent.

*By the Court.*— The several exceptions certified to this court pursuant to sec. 4720, R. S., are each and all overruled.

A motion for a rehearing was denied April 30, 1897.

The authorities as to criminal liability for receiving a deposit into a bank when insolvent are reviewed in a note to *Comm. v. Junkin* (170 Pa. St. 194), in 31 L. R. A. 124. Later cases on the same question are *Meadowcroft v. People*, 163 Ill. 56, 35 L. R. A. 176; and *State v. Beach* (Ind.), 36 L. R. A. 179.— Rep.