## ABE JOHNSON v. EDWARD LARSON AND OTHERS.[1]

March 28, 1929.

No. 27,109.

[1]Reported in 224 N. W. 466.

*M. J. Daly, M. J. Daly, Jr.* and *Anton Thompson,* for appellants.
*Jesse A. Schunk,* for respondent.

STONE, J.

Action against officers and directors of a state bank to recover for a deposit made by plaintiff while the bank was insolvent. After a verdict against two of the defendants, Larson and Coulter, they appeal from an order denying their alternative motion for judgment or a new trial.

The First State Bank of New York Mills (in Otter Tail county) went into liquidation May 21, 1926. Appellants Larson and Coulter, to whom we shall refer as though they were the only defendants, were then and for some time had been respectively the president and vice president of the bank, as well as directors. Both had served on its discount committee, and Mr. Larson was then a member of that committee. Plaintiff's deposit of $2,200 was made November 14, 1925. The evidence indicated that he had received and would receive dividends to the extent of 30 per cent of his claims. At least the jury seems to have accepted that view in allowing a recovery of $1,632.40.

Plaintiff's case supposes deceit and fraud on the part of defendants wrongfully inducing his deposit and is based upon G. S. 1923 (2 Mason, 1927) § 10407. That statute makes it a felony for any officer, director, manager or agent of a bank to accept or receive a deposit in such bank "when he knows, or has good reason to know," that the bank "is unsafe or insolvent." Whatever the situation otherwise, such a statute imposes upon bankers a duty towards depositors, a violation of which results in a civil as well as criminal liability. Baxter v. Coughlin, 70 Minn. 1, 72 N. W. 797; Frederick v. McRae, 157 Minn. 366, 196 N. W. 270; State v. Shove, 96 Wis. 1, 70 N. W. 312, 37 L. R. A. 142, 65 A. S. R. 17.

Insolvency at the time of plaintiff's deposit and thereafter until the bank was closed is alleged, but plaintiff assumed an unnecessarily onerous burden of proof by charging defendants with actual knowledge. He did not aver, as he might have done under the statute, that defendants knew or had good reason to know of the insolvency of their bank. So, the complaint not having been amended and no other issue having been litigated by consent, the case very properly went to the jury upon the theory that plaintiff could not recover unless he had established defendants' knowledge of insolvency.

■ We must then determine whether there is sufficient evidence of actual knowledge of insolvency to support the verdict. Direct proof that either of defendants knew that their bank was insolvent on November 14, 1925, is lacking. But there is ample circumstantial proof to that effect. Defendants were two of the managing officers. Aside from the cashier, no one is shown to have had more intimate knowledge of its condition. But it is not intended thereby to suggest that either of defendants had the intimate knowledge they should have had. It is the duty of directors of a bank to know its condition. If there is danger of insolvency they should know it, and if insolvency becomes the fact they should know that also. It is a thing peculiarly within their knowledge. If they perform their duty, they will know it under all ordinary circumstances. So it may be presumed, in the absence of controlling contrary proof, that the directors and other managing officials of a bank know whether it is solvent or insolvent. State v. Quackenbush, 98 Minn. 515, 108 N. W. 953, and cases cited. See also 3 R. C. L. 494. In this case, while there is much by way of their own direct statement and the corroboration of circumstances to show that defendants were ignorant of the insolvency of their bank, the evidence shows the existence at the time of plaintiff's deposit of so many symptoms of insolvency that upon a consideration of the whole case we do not feel at liberty to disturb the verdict.

The bank had been under special surveillance by the superintendent of banks and his examiners for five months or more. Defend-

ants and the other officers had been warned that the situation was dangerous and that drastic remedies must be resorted to. The bank had a capital of $25,000. It had no surplus November 13, 1925 (the day before plaintiff's deposit) and the record does not show when last it had one. It had only $1,358 of ostensible undivided profits. Its bills payable were $16,000. On the other side of its balance sheet it had overdrafts of almost $3,000, was carrying its furniture and fixtures at $5,268 (an item continually criticized by the banking department) and its "other real estate" was carried at close to $30,000. Quite reasonably might the jury have inferred that on that item and in its loans and discounts, then carried at substantially $260,000, the bank had already sustained so severe a loss as to render it insolvent and that defendants, experienced in the management of this bank as they were and knowing its community and debtors as they did, must have known of the condition. Incidentally and as so frequently has happened, most of the liquid and unquestionably good paper had been pledged as collateral for borrowed money and to some extent as security for the deposit of public funds.

To go further into detail would serve no purpose. We have said enough to show the reasonable basis for the conclusion of the jury that defendants had actual knowledge of the insolvency. The strongest argument for defendants, on the facts, is that there was a considerable shortage of which they were ignorant chargeable to a criminal cashier. Forceful as it is, that circumstance was for the jury and it is not, the whole case considered, of enough weight to overcome the adverse verdict.

■ The jury was charged that when a "banker or person doing a banking business * * * receives on deposit the money of his customer, it is presumed that he knows * * * whether or not the bank is solvent or insolvent. * * * It is his duty to know, and he is under all ordinary circumstances bound to know that he is solvent, *and it is negligent for him not to know of his insolvency.*"

No complaint is made of this instruction so far as it states the rebuttable presumption arising from the receipt of a deposit. But

error is assigned upon the clause we have italicized, the argument being that the jury might have been misled into believing that there could be a recovery against defendants for their mere negligence. If the charge as a whole were reasonably open to that construction, there would be merit in the argument. But, as already indicated, the theory of the case called for actual knowledge of insolvency. The jury was told explicitly that even if they should find the bank insolvent, they would then come to the question, "did defendants know that this bank was insolvent." They were admonished that "it would not necessarily follow because one of the directors was liable that they both were." Again they were cautioned that they must "go into the evidence and say whether Mr. Larson did know at that time whether the bank was insolvent \* \* \*. Then another fact for you to decide is, did John Coulter know \* \* \* that this bank was insolvent at the time of receiving this deposit; and these facts you must find from all the evidence."

With the necessity for a finding of actual knowledge so emphasized, the reference to the possible negligence of, defendants must be considered as without prejudice. Incidentally, although several other things in the charge were excepted to at the time, counsel for the defense took no exception to the allusion to negligence.

The assignments of error present no ground for reversal, and nothing would be gained by their further discussion.

Order affirmed.