## ALFRED BARSNESS v. B. T. TIEGEN AND OTHERS.[1]

October 2, 1931.

No. 28,319.

*Constant Larson* and *Frankberg, Berghuis & Frankberg,* for appellants.

*Leonard Eriksson,* for respondent.

[1] Reported in 238 N. W. 161.

DIBELL, J.

Action to recover from the directors of the Farmers State Bank of Brandon the amount of certain certificates of deposit evidencing moneys deposited in the bank when it was unsafe and insolvent, less amounts paid thereon in course of liquidation, upon the ground that the directors knew or had good reason to know the unsafe or insolvent condition of the bank when the deposits were received. There was a verdict for the plaintiff. The defendants, except one against whom there was no award of damages, appeal from the judgment.

On June 24, 1925, Albert Barsness, the father of the plaintiff, received a certificate of deposit from the Farmers State Bank of Brandon for $10,000. Afterwards the plaintiff became the owner of it. On February 24, 1926, the plaintiff received a certificate of deposit for $500; on December 3, 1925, another for $5,300; and on October 26, 1925, another for $3,700. He was then the owner of certificates aggregating $19,500. Each certificate was a renewal of an earlier one. When each renewal was issued the bank was unsafe or insolvent, and the directors knew or had good reason to know it to be so. This was not the situation when the original certificates were issued. The plaintiff's right of recovery is based upon G. S. 1923 (2 Mason, 1927) § 10407, which makes it an offense in the officers or directors to receive in a bank a deposit, knowing or having good reason to know that it is unsafe or insolvent. It reads:

"Every officer, director, stockholder, cashier, teller, manager, member, messenger, clerk, person, party, or agent of any bank, banking corporation, association or firm, banking house, savings bank, banking exchange, brokerage deposit company and private bank, and every person, company, and corporation engaged in whole or in part in banking, brokerage, exchange, or deposit business in any way, who shall accept or receive on deposit in such bank or banking institution as aforesaid, with or without interest, from any person, any money, bank bills, or notes, or certificates or currency, or other notes, checks, bills, drafts, or paper circulat-

ing as money, when he knows, or has good reason to know, that such person, bank, banking corporation, association or firm, banking house, savings bank, banking exchange, brokerage deposit company or private bank as aforesaid is unsafe or insolvent, and every person knowing such insolvency or unsafe condition who shall be accessory to, or permit, or connive at the accepting or receiving on deposit therein or thereby any such deposits as aforesaid, shall be guilty of felony, and punished by imprisonment in the state prison for not less than one nor more than ten years, or by fine of not less than five hundred dollars nor more than ten thousand dollars."

The statute does not by specific declaration make the officers or directors pecuniarily liable when they offend the statute. Their liability comes from the application of the principle, general in scope, that the violator of a statute intended for the protection of a class is liable to a member of the class for damages proximately resulting from his violation of the law. We have applied the principle to § 10407 in Baxter v. Coughlin, 70 Minn. 1, 72 N. W. 797; Johnson v. Larson, 177 Minn. 60, 224 N. W. 466; Johnson v. Floan, 183 Minn. 461, 237 N. W. 23; and Olesen v. Retzlaff, 184 Minn. 624, 238 N. W. 12, 239 N. W. 672. And it has been applied in many other situations where the statute creates a criminal offense with an attendant penalty.

In Johnson v. Floan, 183 Minn. 461, 237 N. W. 23, involving this statute, it was assumed for the purpose of the case, but not held, that the renewal certificate was a deposit within the statute; but the decision went for the defendant upon the ground that no damage was proved. Theoretically the renewal of a' certificate may be regarded as taking the money from the bank and putting it back under another contract like that under which the first deposit was made. The date of the new certificate is different, the maturity is changed, and the rate of interest may be different. The theory stated has some reason to support it. Usually the fact is not in accord with the theory, and it is not here—rarely is such thing done. A certificate of deposit is in legal effect a promissory note.

Easton v. Hyde, 13 Minn. 83 (90); Cassidy v. First Nat. Bank, 30 Minn. 86, 14 N. W. 363; Mitchell v. Easton, 37 Minn. 335, 33 N. W. 910; Francois v. Lewis, 68 Minn. 409, 71 N. W. 621. When the original certificates of deposit were issued the bank became a debtor. Upon the renewal the bank received no fresh money. Nothing was taken from the plaintiff except the right to immediate payment of the money which he had deposited before. Nothing was given the bank except relief from immediate payment of the principal upon payment of accrued interest. The statute was intended to prevent a bank when insolvent receiving money from a depositor and to protect the depositor from loss. The deposit of course may be in the form of checks or other instruments evidencing money by commercial usage.

In State v. Shove, 96 Wis. 1, 70 N. W. 312, 315, 37 L. R. A. 142, 65 A. S. R. 17, a renewal certificate of deposit was held a deposit within a similar statute when issued under these circumstances:

The certificate holder surrendered a certificate for $200 on which there was due in principal and interest $210, added $90 in cash, and took a certificate for $300. The bank received $90 in new money. Its assets were increased to the extent of the new money. It did what the statute had in mind preventing. It received on deposit money when insolvent. It committed a wrong upon the depositor. Here nothing was added. Payment of existing debts was extended—nothing more. The court said [96 Wis. 9]:

"The mere fact that a portion of the $300 consisted of a certificate of deposit held against the same bank, and the accrued interest thereon, which was surrendered at the time, did not make the transaction essentially different from what it would have been had the whole amount of $300 been deposited in cash, as recited in the certificate. The cash was present, or supposed to be present, in the bank, and was considered and treated the same as though the cashier had actually passed it over to Glye and she had immediately redeposited the same in the bank."

This case is approved in Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L.R.A.(N.S.) 444, 131 A. S. R. 1022.

There is a distinction between the Wisconsin case quoted and this. There the depositor put new money into the bank. Here he did not. He left the money which he had on deposit. The renewal certificate did not represent even in part new money. No actual or positive fraud is alleged.

The rule is general that the renewal of a note, unless it is so expressed or the circumstances show the intention to be so, does not pay the debt, and it continues in its changed form. Geib v. Reynolds, 35 Minn. 331, 28 N. W. 923; State Bank v. Mutual Tel. Co. 123 Minn. 314, 143 N. W. 912, Ann. Cas. 1915A, 1082; Munson v. Bensel, 169 Minn. 434, 211 N. W. 838; 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7444, and cases cited. This is the rule in Wisconsin, from which State v. Shove, 96 Wis. 1, 70 N. W. 312, 37 L. R. A. 142, 65 A. S. R. 17, is cited above. Wisconsin Tr. Co. v. Cousins, 172 Wis. 486, 179 N. W. 801; Rosendale State Bank v. Holland, 195 Wis. 131, 217 N. W. 645. Often this is so held in order to continue the security of the original obligation or to preserve the liability of sureties. The rule applies to renewals of certificates of deposit. Village of Farmington v. Reisinger, 174 Minn. 56, 218 N. W. 444; Hagen v. First State Bank, 180 Minn. 113, 230 N. W. 267. The Farmington case involved the question of the continuance of a debt evidenced by certificates of deposit, after renewal, so as to continue the liability of the sureties on the depository bond of a village. The case of State Bank v. Mutual Tel. Co. 123 Minn. 314, 143 N. W. 912, Ann. Cas. 1915A, 1082, is much the same. Munson v. Bensel, 169 Minn. 434, 211 N. W. 838, involved the continuance of a chattel mortgage security after the renewal of the note which it secured. Hagen v. First State Bank, 180 Minn. 113, 230 N. W. 267, involved L. 1925, p. 37, c. 38, 2 Mason, 1927, §§ 7690-1 to 7690-3, effective March 3, 1925, providing for the reorganization of state banks with the consent of the depositors representing a stated percentage of the deposits. It was held that the compulsory features of the statute could not be applied to nonassenting depositors existing before March 3, 1925—only to those who became depositors afterwards. A depositor, holding two certificates of $1,000 each at five per cent before the statute, renewed them after-

wards and took two certificates of $1,050 each; that is, the interest was included in the renewals. It was held that by the surrender and renewal the old debt was not merely continued but that a new deposit was created arising after the statute, and the certificate holder was bound by the statute as a subsequent depositor.

Whether a renewal certificate is to be held as a continuance of the old certificate or as evidence of a fresh deposit depends upon the particular facts of the case and the particular statute construed. One purpose of § 10407 was to prevent a loss to the intending depositor by penalizing the bank officer and so preventing the receipt of a deposit. As we view it, a construction of the statute holding that it was not intended that the renewal of a certificate should be a crime is the better one. At the time of taking the renewal the status of the depositor is fixed. He is then a depositor in an insolvent bank. He was substantially the payee in a note. The renewal of a note is not an offense. In most cases a refusal to take his renewal cannot rightfully help him, for the bank should not pay when it is insolvent; it should refuse to pay and should not receive a deposit. An argument reaching either the result claimed by the plaintiff or that claimed by the defendant may be made with show of reason. The result we reach seems most in accord with the terms of the statute and the practical object to be attained.

Judgment reversed.