IN RE ESTATE OF CARL JANKE.
RUDOLPH JANKE AND OTHERS v. WILLIAM ESPENSON.[1]

January 4, 1935.

No. 30,085.

*Fowler, Carlson, Furber & Johnson,* for appellant.
*Henry N. Jenson,* for respondents.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from a judgment entered pursuant to findings made by the Honorable Carroll A. Nye, Judge, affirming an order of the probate court of Becker county surcharging defendant's account as executor with some $4,427.16 lost because of the closing of the First National Bank of Frazee. The facts are not in serious dispute and may be summarized thus: Carl Janke, a long-time resident of Becker county, departed this life March 9, 1932, testate. Defendant was the named executor of the will. He duly qualified

[1]Reported in 258 N. W. 311.

May 4, 1932, and took possession of the estate assets, the principal part of which consisted of two certificates of deposit in said bank, $4,100, and a checking account deposit of $466.91. One of the certificates had matured prior to defendant's appointment, the other matured shortly thereafter. Neither certificate was cashed, nor was any of the money withdrawn from the bank at the time of its closing September 15, 1932. Defendant was during all the times herein mentioned the active and managing officer of the bank and had been such over a period of many years. He had charge of practically all of its affairs and had full knowledge of its loans, investments, and holdings. He made all required reports to the comptroller of the currency and in general attended to all banking details.

On January 2, 1932, the deposits of the bank amounted to $430,764.22. On August 26, 1932, there had been heavy withdrawals so that the account then stood at $316,564.89. When the bank closed on September 15 the deposits were down to $300,120.18. There were no bills payable until June 28, 1932, at which time the bank borrowed $10,000. When the bank closed these amounted to $37,500. More than 30 per cent of the bank's deposits had been withdrawn between January 2 and September 15, 1932. The real estate account, which included banking house with furniture and fixtures, was carried at $44,157.50. In addition thereto, the bank held a $20,000 note secured by real estate mortgage executed by the Frazee Realty Company. This company had been formed to take over real estate assets of the bank. Thus the bank possessed at the time of its closing more than $64,000 of non-liquid and "slow" assets. The capital stock was $30,000, surplus $10,000, and expenses and interest paid in excess of earnings increased from $1,378.77 on January 2 to $6,596.96 on September 15, the time of closing. Defendant could not help knowing that deposits were being withdrawn at an alarming rate, that bills payable were increasing at a pace that could not be kept up, and that the bank was operating at a daily and constantly increasing loss. Undoubtedly defendant fully realized that the bank was facing a crisis. So it is not surprising to find that on August 26, 1932, he called

a meeting of the board of directors and urged that the bank be closed because of these unsatisfactory conditions, due in large part at least to the fact that other banks were closing in that vicinity and withdrawals on the part of depositors were extremely heavy. Against defendant's wishes in that behalf, the board of directors finally persuaded him to keep the bank open and at that meeting authorized him to borrow more money, namely, $20,000, the borrowed money at that time being $17,500. Defendant on cross-examination testified in part as follows:

Q. "Now, during this time, Mr. Espenson, between August 26th, when you advised the closing of the bank, and the time when you actually did close it, which was approximately three weeks, what, if anything, did you do to protect this estate in connection with the fund it had on deposit?

A. "I left them as they were.

The Court: "What is the answer?

A. "I left them as they were.

Q. "In other words, you did nothing?

A. "Yes, sir.

Q. "You could have withdrawn the funds, of course?

A. "Yes."

He further testified:

Q. "And at that time, on the 26th day of August, you told them that the bank should be closed?

A. "I don't know as I said it in those words.

Q. "What words did you use, Mr. Espenson?

A. "I suggested to them that it might become necessary for us to close, that it might become advisable for us to close.

\* \* \* \* \* \*

Q. "Well, at that time and at that meeting you advised the closing of the bank, did you not?

A. "In a way I did.

Q. "And to such an extent that the board of directors opposed your suggestion and asked you if there was not some way to keep it open?

A. "Yes, sir."

The probate court concluded that defendant had not exercised the sound judgment or discretion of the ordinarily prudent man; that he was negligent in permitting the money to remain, in the bank until its closing, and, as a consequence, held defendant to the loss thus sustained. Defendant then appealed to the district court, where the case was tried anew. The trial judge made findings sustaining the conclusion reached by the probate court. Judgment in conformity therewith was, entered and it is from this that the present appeal is taken. The only question for our determination is whether the findings of the trial court are reasonably sustained by the evidence.

For the purpose of this discussion we shall assume, as claimed by defendant, that the statute limits and defines the responsibilities of an executor. 2 Mason Minn. St. 1927, § 8787, provides:

"No executor * * * shall make profit by the increase, nor suffer loss by the decrease or destruction without his fault, of any part of the personal estate, * , * *."

In Harding v. Canfield, 73 Minn. 244, 75 N. W. 1112, 1113, the test to be applied "is whether he honestly exercised in the premises that degree of care which men of common prudence ordinarily exercise in their own affairs." That is to say, defendant is not an insurer. Defendant candidly admits that he is held to a higher degree of care and responsibility than would be an outsider not so well acquainted with the bank's affairs. The duties and responsibilities of trustees have been before the courts in numerous cases. An exhaustive discussion is not deemed necessary but a few of the cases should be referred to. Thus, in Minneapolis Trust Co. v. Menage, 73 Minn. 441, 448, 76 N. W. 195, 197, Mr. Justice Mitchell speaking for the court said:

"The highest degree of good faith is required of a trustee in the execution of his trust. Public policy demands that this duty be faithfully performed and rigidly enforced. The courts ought, in the interests of the administration of justice, to see to it that the standard of duty in such matters is not lowered, even if the parties

themselves are disposed to overlook or condone a departure from the strict line of duty."

Again, in Smith v. Tolversen, 190 Minn. 410, 413, 252 N. W. 423, 424, Mr. Justice Stone said:

"Before going further with the facts, it is well to repeat as premise of decision that 'a trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive,' is the standard of his behavior. That rule 'is unbending and inveterate.' Meinhard v. Salmon, 249 N. Y. 458, 464, 164 N. E. 545, 546, 62 A. L. R. 1."

In Estate of Allis, 191 Wis. 23, 30, 209 N. W. 945, 947, 210 N. W. 418, the court said:

"The law requires of a trustee 'more than good faith and honest judgment.' It requires that the judgment of the trustee be 'enlightened and guided by the approved rules applicable to the investment of trust funds, not to his uninformed, personal judgment, exercised without reference to legal rules and principles. * * * He must always bear in mind that he is dealing with trust funds, which were not given him to be used in developing or furthering business enterprises, but to be guarded carefully and invested cautiously, * * *.' "

See also Estate of Dreier, 204 Wis. 221, 235 N. W. 439; Meinhard v. Salmon, 249 N. Y. 458, 164 N. E. 545, 62 A. L. R. 1, 5. In re Scudder's Estate, 21 Misc. 179, 47 N. Y. S. 101, 106. The Michigan court recently in Cashman v. Pontiac Tr. Co. 269 Mich. 68, 256 N. W. 807, 810, said:

"Where a trustee places itself in a position where self-interest conflicts with duty, its acts will be scanned with closer scrutiny than if made in the usual course of business."

In that case the court held the fiduciary (administrator) to liability because (256 N. W. 811) "the circumstances imposed upon it a duty of special and active watchfulness and care" and that this duty had not been performed. And in the Scudder case the court said [21 Misc. 186]:

"He knew there must come a time when there would be a conflict between the performance of his duties as cashier and his duties as administrator."

And further [21 Misc. 185]:

"but the Scudder estate should not suffer or be delayed in the collection of its property until the receiver of said bank has marshalled all its assets, a process extending through several years perhaps and depending somewhat on the result of various and prolonged litigations. The loss, if any, must be borne by those who have assumed the liability. * * * To the community at large it may have been considered a proper depository and an institution where strict rules of economy and integrity were followed; and a person unfamiliar with its true condition might escape liability for any loss; but for one in a fiduciary capacity to deliberately deposit funds there, having knowledge of its situation, would be negligence of the grossest kind, and an example of remissness in the discharge of official duty."

In Bookhart v. Younglove, 207 Iowa, 800, 807, 218 N. W. 533, 536, the court held the fiduciary to responsibility because he had deposited the money in a private bank of which he was part owner; this upon the theory that there was liability "regardless of his good faith, and regardless of the care exercised." This court in Johnson v. Larson, 177 Minn. 60, 62, 224 N. W. 466, said:

"It is the duty of directors of a bank to know its condition. If there is danger of insolvency they should know it, and if insolvency becomes the fact they should know that also. It is a thing peculiarly within their knowledge. If they perform their duty, they will know it under all ordinary circumstances."

We have passed upon the theory of the case as tried and determined in the court below. An interesting question arises as to whether or not a fiduciary may under any circumstances deposit or leave on deposit the money in his hands as such fiduciary in his own bank and escape liability upon the theory of exercising due care. This question, however, is not before us and is not decided.

While an executorship is not a trust, yet an executor is a fiduciary; so also is a trustee. Restatement, Law of Trusts (Tent. Draft No. 1) § 9. Hence, when reference has been made to fiduciaries and trustees in this case it is intended thereby to refer to the duties and responsibilities of both thereof. There can be no distinction as to liability.

The facts in the instant case are such that no other conclusion than that reached by the court below could be sustained.

Judgment affirmed.